UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>                                             )<br>    Plaintiff                           )<br>                                             )<br>    v.                                    )<br>                                             )     Case No. 2:19-cr-00220-JDL<br>TERREL WALKER,              )<br>                                             )<br>    Defendant                       )  | |

**DEFENDANT'S MOTION FOR DISCOVERY**

NOW COMES the Defendant, Terrel Walker, by and through his attorney, Leonard I. Sharon, Esq., and moves this Honorable Court as follows:

Just as a song begins from a single note, this case begins with a traffic stop by Trooper John Darcy on the Maine Turnpike. The circumstances of that stop -- its legal justification or lack thereof -- will determine the rest of this tune. But, before this song can be played out, Mr. Walker requires additional information in the form of discovery materials to properly assert and defend his constitutional rights.

Defendant asserts herein and by accompanying Motions to Suppress and to Dismiss that the traffic stop executed by Trooper John Darcy was not a valid stop supported by articulable suspicion, but rather a purely pretextual stop conducted on the basis of the Defendant's race, and racial characteristics such as his hair style and manner of dress, in violation of his right to be free from unreasonable seizure pursuant to the Fourth Amendment and his right to equal protection and substantive due process guaranteed to him under the Fourteenth Amendment to the U.S. Constitution. Additional discovery is necessary to assert these rights at hearing on such motions.

1

I.  **BACKGROUND**

Terrel Walker was driving Northbound on Interstate 95. When he passed through the toll booth in York, he passed near enough to Trooper Darcy's patrol vehicle for Trooper Darcy to see Mr. Walker through the windows of Mr. Walker's vehicle. After observing Mr. Walker, Trooper Darcy commented to another officer in the vehicle with him:

> John Darcy: "Like, if I see a white thug, I'm going to be interested, just like a black thug or a fucking Chinese thug. Like, I'm interested in thugs. That's not racial profiling. Like, some black guy goes by, and he's just like a normal dude from Portland, I don't give a fuck. You know what I mean, like whatever. This guy kinda looks like a thug to be honest with you."
>
> Patrick Pescitelli: "The guy… you see the guy driving?"
>
> John Darcy: "Yeah, he's wearing a wifebeater, he's got dreads. He looks like a thug. He may not be . . . and I'm not profiling him racially because I don't care that he's white or black. White kid, neck tats all over him, fucking sideways hat, thug. You know what I mean? So like . . . I get . . . I hate when people try to make it seem like that's what it is. I care about where people are from, and the way they seem . . . you know what I mean? Do they seem like they can be involved in drug dealing or gangs or something. I don't give a fuck if someone's black or white. Like . . . and I like saying this, like Nicole has a niece who is half-black. I'll tell someone, 'Dude, my fucking niece is half-black.' Like, don't play that racial shit with me."

These racist comments were captured on the cruiser's internal audio recording mics because after pulling out and following Mr. Walker for a few moments, Trooper Darcy initiated a traffic stop of Mr. Walker's vehicle.

Trooper Darcy's purported rationale or purpose of the stop was Mr. Walker's travel in the center lane of the three-lane Northbound section of I-95. Trooper Darcy claimed to have stopped Mr. Walker for violation of 29-A M.R.S. § 2052, which restricts drivers on divided highways to "ordinary operation to the right-hand lane and may use adjacent lanes for overtaking and passing

another vehicle, but must return to the right-hand lane at the earliest opportunity." 29-A M.R.S.A. § 2052(6).

Mr. Walker, in light of the other vehicles on the road, was operating in the center of three lanes of traffic on the Northbound side of I-95. At issue in the Defendant's motion to suppress is the credibility and veracity, and therefore also the bias of Trooper Darcy's allegation that Mr. Walker did not "return to the right-hand lane at the earliest opportunity." *Id.* If Trooper Darcy is believable on this matter, then the subsequent stop seems to satisfy *Terry v. Ohio*, and *United States v. Whren.* However, even *Whren* is limited in its applicability, and shamefully outdated in its rationale. Further argument on these issues is contained in the foregoing Motions to Suppress and to Dismiss.

## II. ADDITIONAL DISCOVERY REQUEST

Mr. Walker now requests the following materials be provided by the government pursuant to its obligations and responsibilities under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny. In the event that the government asserts, as it is expected to do, that such materials are not within the scope of *Brady,* Mr. Walker now requests that this Court order such materials produced to the Court for *in camera* review pursuant to *Brady*.

Mr. Walker requests the following materials:

1. All police reports and video and audio recordings for any vehicle stops on the Maine Turnpike conducted by Trooper John Darcy in the last three years. For each report or incident please include:
    a. The purported justification for the stop
    b. The race of the driver and any or all passengers in the vehicle
    c. Names of drivers and vehicle occupants
    d. All records of citations and warnings actually issued pursuant to these stops, and all records of drivers released with no formal action taken against them
    e. All records regarding the frequency of K-9 investigations subsequent to such stops
    f. All records related to the frequency with which Trooper Darcy searches stopped vehicles via means other than K-9 sniff

3

      g. All records related to the frequency with which Trooper Darcy actually discovers contraband in stopped vehicles.

2. Any complaints known, filed or reported against Trooper Darcy by the public or his peers and colleagues or prosecutors alleging that he conducted traffic stops not supported by articulable suspicion or engaged in racial profiling for the duration of his law enforcement career, and any disciplinary actions taken against him on these bases.

3. Any complaints known, filed or reported against Trooper Darcy by the public or his peers and colleagues or prosecutors for using racial slurs, articulating racial prejudice, using or referencing racial stereotypes or other racist language or behavior.

4. All police reports and video and audio recordings for any vehicle stops on the Maine Turnpike conducted by all troopers of Troop G of the Maine State Police in the last three years. For each report or incident please include:
    a. The purported justification for the stop
    b. The race of the driver and any or all passengers in the vehicle
    c. Names of drivers and vehicle occupants
    d. All records of citations and warnings actually issued pursuant to these stops, and all records of drivers released with no formal action taken against them
    e. All records regarding the frequency of K-9 investigations subsequent to such stops
    f. All records related to the frequency with which troopers search stopped vehicles via means other than K-9 sniff
    g. All records related to the frequency with which troopers actually discover contraband in stopped vehicles.

5. Any complaints known, filed or reported against troopers of Troop G of the Maine State Police by the public or their peers and colleagues or prosecutors alleging that they conducted traffic stops not supported by articulable suspicion or engaged in racial profiling for the duration of their law enforcement career, and any disciplinary actions taken against troopers on these bases.

6. Any complaints known, filed or reported against troopers of Troop G of the Maine State Police by the public or peers and colleagues or prosecutors for using racial slurs, articulating racial prejudice, using or referencing racial stereotypes or other racist language or behavior.

### III. ARGUMENT AND MEMORANDUM OF LAW

Evidence which is favorable to the accused and material to guilt or punishment must be produced by the government pursuant to *Brady v. Maryland.* "Evidence is 'favorable to the accused' if it is either exculpatory or impeaching in nature." *United States v. Prochilo,* 629 F.3d

4

264, 268 (1st Cir. 2011).  Further, evidence related to witness reliability is 'material' "[w]hen the reliability of a given witness may . . . be determinative of guilt." *Giglio v. United States*, 405 U.S. 150, 154 (1972).

To prevail in this discovery request, Mr. Walker must "articulate with some specificity" three things.  *Prochilo*, 629 F.3d at 269.  First, Mr. Walker must describe "what evidence he hopes to find in the requested materials."  *Id.*  Second, he must explain "why he thinks the materials contain this evidence."  And finally, he must describe "why this evidence would be both favorable to him and material."  *Id.*  Each requirement is now taken in turn.

In the requested materials, Mr. Walker hopes to find evidence of Trooper Darcy's racial bias and animus consistent with his comments on the audio recording of Mr. Walker's traffic stop. Such evidence might include a statistically higher rate of traffic stops, K-9 searches, searches, and summonses for minor offenses for drivers or passengers of color.  Additionally, Mr. Walker hopes to find a pattern of racist statements, actions, and attitudes expressed by Trooper Darcy and reflected in his disciplinary record.

The reasons that Mr. Walker suspects such evidence may exist in these materials are both general and specific to Trooper Darcy.  According to the Stanford University Open Policing Project, nationwide rates of stops and searches are higher for black and Hispanic motorists, suggesting racial bias in policing is widely pervasive and significant.[1]  In this case, Trooper Darcy made racist statements about Mr. Walker, just prior to this traffic stop.  Additionally, Trooper Darcy has previously been accused of racial profiling before this Court.  *See United States v. Anthony Jones*, Case 2:19-cr-201, Document 47 Filed 6/12/2020, Order on Motion for Discovery.

---

[1] A large-scale analysis of racial disparities in police stops across the United States, *Pierson, E., et al.,* available at: https://5harad.com/papers/100M-stops.pdf (last visited June 25, 2020).

(In *Jones,* this Court did not reach the issue as to whether *Brady* requires the provision of this information by the United States.  Unlike *Jones,* we do have a case where Trooper Darcy's investigation was not supported by a reasonable suspicion of criminal activity.)

If Mr. Walker is correct, and the requested materials bear out the evidence anticipated, such evidence will indeed be both favorable and material to Mr. Walker.  Evidence of racial bias is material to Trooper Darcy's credibility and bias and informs this Court's evaluation of his testimony regarding Mr. Walker's alleged failure to comply with 29-A M.R.S. §2052(6).  Such evidence is favorable to Mr. Walker to the extent to which it impeaches Trooper Darcy's credibility regarding the validity of this traffic stop, both under *Terry*, and *Whren,* and goes to issues related to Mr. Walker's rights under both the Fourth and Fourteenth Amendments.

If records of Trooper Darcy's efforts to enforce 29-A M.R.S. §2052 follow a racialized pattern, such evidence supports Defendant's claim that Trooper Darcy did not have an actual articulable suspicion of any wrongdoing by Mr. Walker, but rather stopped Mr. Walker on the basis of his race alone, to impermissibly rely upon that factor to further a racist investigative purpose.  If Trooper Darcy's suspicion of Mr. Walker was based in whole or in part on his race, such suspicion and the stop that followed violated Mr. Walker's right to equal protection under the law and substantive due process.  Thus, materials requested herein "could contain favorable, material evidence," in support of defendant's Motions to Suppress and Dismiss. *Prochilo*, 629 F.3d 264, 269.

WHEREFORE, for all the foregoing reasons, Defendant Terrel Walker requests that this Honorable Court Order the United States to produce the requested materials to the Defendant, or to the Court for an *in camera* review to assess their materiality and favorability to the Defendant.

Dated at Lewiston, Maine, this 1st day of July, 2020.

/s/Leonard I. Sharon
Leonard I. Sharon, Esq.
ME Bar No. 3291
Attorney for Defendant, Terrel Walker
Andrucki & King
179 Lisbon Street, 3rd Floor
P.O. Box 7120
Lewiston, ME 04243-7120
(207) 777-4600
*LIS@andruckilaw.com*


/s/ Logan E. Perkins
Logan E. Perkins, Esq.
ME Bar No. 5033
Co-counsel for Defendant, Terrel Walker
Perkins Law Office
253 Waldo Ave.
Belfast, ME 04915
(207) 949-7371
*logan@belfastcriminallaw.com*

CERTIFICATE OF SERVICE

       I hereby certify that I have this day electronically filed the foregoing Defendant's Motion for Discovery with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Meghan E. Connelly, AUSA
United States Attorney's Office
100 Middle Street, East Tower, 6th Fl.
Portland, ME 04101
meghan.connelly@usdoj.gov

I hereby certify that on July 1, 2020, I have mailed by United States Postal Service, the document to the following non-registered participant at the following address:

Terrel Walker
P.O. Box 372
Orono, ME 04473

       Dated at Lewiston, Maine, this 1st day of July, 2020.

                                          /s/Leonard I. Sharon
                                          Leonard I. Sharon, Esq.
                                          Attorney for Defendant, Terrel Walker
                                          Andrucki & King
                                          179 Lisbon Street, 3rd Floor
                                          P.O. Box 7120
                                          Lewiston, ME 04243-7120
                                          (207) 777-4600
                                          LIS@andruckilaw.com